**Johnmark Okey NWOLISE, Petitioner,**

v.

**U.S. IMMIGRATION & NATURALIZA-TION SERVICE, Respondent.**

**No. 91–1173.**

United States Court of Appeals,
Fourth Circuit.

Argued June 1, 1992.

Decided Sept. 3, 1993.

---

Jeffrey Andrew Bartos, Institute for Public Representation, Georgetown University Law Center, Washington, DC, argued (Douglas L. Parker, on brief), for petitioner.

Kristen Ann Giuffreda, Civ. Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., Richard M. Evans, Asst. Director, Office of Immigra-

tion Litigation, Stewart Deutsch, Civ. Div., U.S. Dept. of Justice, on brief), for respondent.

Before WIDENER and NIEMEYER, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Johnmark Okey Nwolise petitions for review of an order of the Board of Immigration Appeals (the Board) denying his motion to reopen his deportation proceeding. Nwolise moved to reopen his case in order to apply for discretionary relief in the form of a waiver of deportation pursuant to section 212(c) of the Immigration and Nationality Act (the Act), codified at 8 U.S.C. § 1182(c).[1] The Board held that its previous order affirming an immigration judge's order of deportability terminated Nwolise's status as an "[a]lien[ ] lawfully admitted for permanent residence," 8 U.S.C. § 1182(c), and thus rendered him ineligible for discretionary relief under section 212(c). As we find no error, the petition will be denied.

### I

Nwolise, a native and citizen of Nigeria, lawfully entered the United States as a student on February 7, 1982. After marrying a United States citizen, Nwolise was granted lawful permanent resident status on April 25, 1983. Nwolise lives with his wife and children in Baltimore, Maryland.

On October 10, 1985, a federal jury in the United States District Court for the District of Maryland convicted Nwolise of conspiracy to distribute heroin, possession with intent to distribute heroin, distribution of heroin, and related offenses. He was sentenced to a total prison term of 12 years, of which he actually served 52 months.

On March 2, 1989, the INS initiated deportation proceedings against Nwolise by issuing

---

1. We will conform to the apparent convention in the field of immigration law and refer to the discretionary relief provision, 8 U.S.C. § 1182(c), as section 212(c) of the Immigration and Nationality Act.

an order to show cause alleging that his narcotics convictions made him deportable under section 241(a)(11) of the Act. See 8 U.S.C. § 1251(a)(11). Nwolise's deportation hearing commenced on July 21, 1989. There he admitted the factual allegations contained in the order to show cause but denied deportability. On the strength of the record of Nwolise's narcotics convictions, the immigration judge found him deportable under the Act. Nwolise then filed an application for political asylum and withholding of deportation, and the hearing continued on those issues. Upon conclusion of the hearing the immigration judge held that Nwolise was ineligible either for political asylum or withholding of deportation and, accordingly, ordered his deportation.

On February 21, 1990, Nwolise timely filed an appeal of the deportation order to the Board. The Board found that the record supported the immigration judge's finding of deportability, his denial of asylum, and his denial of withholding of deportation. Thus, the Board dismissed Nwolise's appeal on June 5, 1991.

■ On June 14, 1991, Nwolise filed with the Board a motion to reopen his deportation proceeding pursuant to 8 C.F.R. §§ 3.2 and 3.8 (1992). In that motion Nwolise did not challenge the finding of deportability, the denial of asylum, or the denial of withholding of deportation; rather, he sought discretionary relief from deportation pursuant to section 212(c) of the Act. See 8 U.S.C. 1182(c). Section 212(c) provides in pertinent part as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the

discretion of the Attorney General without regard to the provisions of paragraphs (1)–(25), (30), and (31) of subsection (a) of this section.

8 U.S.C. § 1182(c).[2] The plain language of the statute seems only to apply to aliens returning to the U.S.; however, concerns that such an application of the statute would violate the Equal Protection component of the Fifth Amendment have led the INS and courts uniformly to hold this discretionary relief available to all eligible aliens. See, e.g., *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I & N Dec. 26 (BIA 1976). Thus, section 212(c) allows any alien "lawfully admitted for permanent residence"[3] yet facing deportation to apply for discretionary relief upon completion of "a lawful unrelinquished domicile of seven consecutive years."

The parties do not dispute that Nwolise was lawfully admitted for permanent residence in the U.S. on April 25, 1983, following his marriage to a U.S. citizen. Nor is it disputed that Nwolise completed seven years of "lawful unrelinquished domicile" in this country on April 25, 1990, some three months after he lodged his appeal with the Board and some 13 months before the Board's decision affirming the deportation order. Instead, the dispute in this case involves the timing of Nwolise's application for discretionary relief.

Nwolise first requested discretionary relief in his motion to reopen his deportation proceeding, which he filed with the Board on June 14, 1991, nine days after the Board's denial of his appeal. By order dated August 6, 1991, the Board denied Nwolise's motion to reopen. The Board held that Nwolise became ineligible for section 212(c) discretionary relief by virtue of the Board's June 5, 1991 decision affirming the immigration judge's order of deportation. According to

---

2. We note that section 212(c) was amended by the Immigration Act of 1990, Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052. That amendment made ineligible for section 212(c) relief any alien "who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years." The amendment applies only to admissions after November 29, 1990. Pub.L. No. 101–649, § 511(b), 104 Stat. 5052.

3. The Act defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). We discuss this definition at pp. 310–11, *infra*.

the Board, that decision made final Nwolise's order of deportation and thus terminated his status as an alien "lawfully admitted for permanent residence," which is a prerequisite for section 212(c) relief. Nwolise then filed a timely petition for review of the Board's order. See 8 U.S.C. § 1105a(a).

Nwolise's petition raises two issues before this court.[4] First, whether a final order of deportation renders an alien ineligible for section 212(c) discretionary relief even when the order of deportation comes after the date of completion of the seven-year period of lawful unrelinquished domicile. If we answer this question in the affirmative, we then must consider at what point in the deportation process such orders become final so as to preclude an alien from obtaining section 212(c) relief. We address these questions in turn.

## II

### A

■ Before considering the substance of Nwolise's appeal, we pause to note the standard of review that governs our consideration of this case. Nwolise's claims of error raise only questions of law which, of course, this court is empowered to review *de novo*. However, even as we conduct that plenary review, we must be mindful that we are reviewing the considered judgment of the federal agency charged with interpreting and administering the statute at issue in this case. Accordingly, it is well established that the legal determinations of the Board in interpreting the Act are entitled to deference by this court. See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). Indeed, we have stated that where "the BIA's interpretation of the statutory section is neither inconsistent or unjustified, we [will] uphold the Board's construction which, in its estimation, will better serve the legislative intent and purpose." *Chirava-*

*charadhikul v. INS*, 645 F.2d 248, 251 (4th Cir.), cert. denied, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). With these admonitions in mind, we turn to Nwolise's claims.

### B

■ Section 212(c), when read with the definitional provision of the Act, 8 U.S.C. § 1101(a), sets out two separate requirements that an alien must satisfy before he will be eligible to apply for discretionary waiver of inadmissibility or deportation. First, the alien must have completed seven consecutive years of lawful unrelinquished domicile prior to the application. As we have noted, there is no dispute in this case that Nwolise completed his seven-year domicile on April 25, 1990.

The second requirement is that the applicant alien must be "lawfully admitted for permanent residence." See text of § 212(c) at p. 308, *supra*. On their face the words "lawfully admitted for permanent residence" might suggest that an alien satisfies this requirement once and for all simply by gaining lawful permanent residence status. However, the Act defines "lawfully admitted for permanent residence" so as to make that requirement a *continuing* one. The Act provides that "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*." 8 U.S.C. § 1101(a)(20) (emphasis supplied).

That an order of deportability is a change in immigration status sufficient to terminate an alien's lawful permanent residence status now is clearly established. See, e.g., *Matter of Lok*, 18 I & N Dec. 101 (BIA 1981), affirmed on other grounds sub nom. *Lok v. INS*, 681 F.2d 107 (2d Cir.1982). Further, the weight of authority supports the INS's position that the Act's use of the words "such status not having changed" commands that an alien's loss of lawful permanent residence

---

4. We note that Nwolise does not seek review of the order of deportation, the denial of asylum, or the denial of withholding of deportation. His

sole challenge is to the Board's denial of his application for section 212(c) relief contained in his motion to reopen.

status renders him ineligible to apply for section 212(c) discretionary relief, at least where that change in status occurs before the alien has accrued the requisite seven-year lawful unrelinquished domicile. See *Lok*, 18 I & N Dec. at 105; *Rivera v. INS*, 810 F.2d 540, 542 (5th Cir.1987); *Variamparambil v. INS*, 831 F.2d 1362, 1366 (7th Cir.1987); *contra Vargas v. INS*, 938 F.2d 358, 360–64 (2d Cir.1991).

However, Nwolise argues that even if an order of deportation issued before an alien's completion of the seven-year lawful domicile makes him ineligible for section 212(c) relief, the same result should not obtain where the order of deportation comes after the successful completion of the seven-year period. In other words, Nwolise asserts that once his eligibility for discretionary relief first was established on April 25, 1990, no subsequent change in his immigration status, including a final order of deportability, could extinguish that eligibility. We find no basis in the Act or the case law for such a distinction.

■ The most straightforward reading of the Act discloses no basis for a holding that once an alien has completed his seven year lawful domicile without suffering a deportation order he somehow reaches a safe harbor and gains irrevocable eligibility for section 212(c) relief. The Act's proviso that "such status not hav[e] changed" pertains not to section 212(c)'s requirement of seven years of lawful unrelinquished domicile, rather to the requirement that the applicant alien be one "lawfully admitted for permanent residence." The continuance of the status of lawful permanent residence is a requirement separate from and independent of the seven-year domicile requirement. Seven years of lawful unrelinquished domicile thus is a necessary but not sufficient condition for section 212(c) relief; the applicant, at the time of application, also must be lawfully admitted for permanent residence. Our conclusion in this regard is in accord with the decision of the Fifth Circuit which has considered this specific issue. See *Rivera*, 810 F.2d at 542.[5]

Therefore, we hold that termination of an alien's lawful permanent residence status by an order of deportation, entered after the completion of the requisite seven years of lawful unrelinquished domicile, likewise terminates that alien's eligibility for section 212(c) relief.

## C

Having determined that a final order of deportation renders an alien ineligible for discretionary relief under section 212(c) of the Act, we must address precisely at what point in the deportation proceeding such an order becomes "final." This question has been the subject of discussion, both within the courts that have considered it and between those courts and the INS. See generally *Variamparambil*, 831 F.2d at 1365–68; *Rivera v. INS*, 791 F.2d 1202 (5th Cir.1986), vacated and replaced after rehearing, 810 F.2d 540 (5th Cir.1987); *Matter of Cerna*, Appendix, 1991 WL 353528, 1991 BIA LEXIS 22 (BIA Oct. 7, 1991). Nwolise challenges the Board's denial of his motion to reopen in this respect on two grounds: first, that the Board's holding that his deportation order became final for section 212(c) purposes upon the Board's denial of his appeal on the merits is not supported in the Act; and second that, even if that holding is in a general sense correct, his motion to reopen the proceeding before the Board made the Board's order nonfinal and thus preserved his eligibility for discretionary relief.

As we have noted, the Act itself makes no attempt to define the moment at which lawful permanent residence ends by further defining the words "such status not having changed" of 8 U.S.C. § 1101(a)(20). Accordingly, the task of interpreting that provision quite properly has been taken up by the Board. At least since the Board's decision in *Matter of Lok, supra,* the position of the INS has been that such orders become final and thus effect a change in lawful permanent residence status at the time that they become "administratively final," that is, when

---

**5.** That the deportation order in *Rivera* became final after the alien's completion of seven years of lawful unrelinquished domicile is made clear in the original panel opinion in that case, reported at 791 F.2d 1202, 1203. That opinion was vacated on rehearing and replaced by the opinion cited above.

the Board affirms an immigration judge's order of deportation or an alien, having suffered an order of deportation, allows the time for filing an appeal with the Board to run. See *Lok*, 18 I & N at 105. The Board arrived at this result after carefully examining the four events that most plausibly might trigger the end of lawful permanent residence status: (1) the immigration judge's initial determination of deportability; (2) when the immigration judge's determination becomes "administratively final," *i.e.*, when the Board affirms the order or the time for appeal lapses; (3) when a United States Court of Appeals acts on the alien's petition for review or the time for filing such a petition lapses; or (4) when the deportation order is executed by the alien's departure, voluntary or involuntary, from the U.S. *Lok*, 18 I & N at 105.

The Board quickly eliminated the first and fourth events from consideration. The Board was of opinion that terminating an alien's lawful permanent residence status upon an immigration judge's initial determination of deportability would be premature in light of the alien's right to a *de novo* appeal before the Board. See 8 C.F.R. §§ 3.1(b)(2), 242.21; *Lok*, 18 I & N at 106. At the other end of the spectrum, the Board determined that while it had been clear that an alien lost his lawful permanent residence upon the execution of an order of deportation, it did not follow that the alien retained his lawful status until actual deportation. Rather, the Board held that where a deportable alien had exhausted all appeals but, for whatever reason, had not yet departed the country, treating that alien as a lawful permanent resident would have the "anomalous result" of extending the significant benefits attendant to lawful permanent residence status to an individual who remained in this country without any legal basis whatsoever. *Lok*, 18 I & N at 106.

The Board next considered whether an alien's lawful permanent residence status should persist through the course of an appeal from the Board's decision until the exhaustion of the appeals process in the United States Court of Appeals. After noting that the "[a]uthority to adjudicate deportability is vested primarily in the Attorney General and his delegates, the immigration judge and the Board," and that the review of the Court of Appeals is limited in scope, see 8 U.S.C. § 1105a(a)(4), the Board rejected this option. *Lok*, 18 I & N Dec. at 107. Here the Board primarily was concerned that allowing eligibility for section 212(c) relief to extend throughout the period necessary to obtain judicial review would "encourage spurious appeals to the courts" and reward aliens for prolonging an already lengthy process. Thus, the Board settled on the rule that it has employed since *Lok*: lawful permanent residence status continues until an order of deportation becomes administratively final, *i.e.*, "when the Board renders its decision in the case upon appeal or certification or, where no appeal to the Board is taken, when appeal is waived or the time allotted for appeal has expired." *Lok*, 18 I & N at 105; see also 8 C.F.R. § 243.1.

Though, as we have noted, the question of when an alien loses his status as a lawful permanent resident has aroused some discussion in the Courts of Appeal, the Board's position in *Lok* for the most part has been received favorably by the courts. See *Katsis v. I.N.S.*, 997 F.2d 1067 (3rd Cir.1993); *Rivera*, 810 F.2d at 542; *Variamparambil*, 831 F.2d at 1366; *contra*, *Butros v. I.N.S.*, 990 F.2d 1142 (9th Cir.1993) (en banc). Indeed, at least one court has held that lawful permanent residence status may terminate even before administrative finality. See *Marti–Xiques v. I.N.S.*, 741 F.2d 350, 355 (11th Cir.1984) (lawful permanent residence status ends on date "INS commences the deportation proceedings, *i.e.*, when the order to show cause is issued"). The Second Circuit has rejected the *Lok* rule and held that lawful permanent residence status, and thus eligibility for section 212(c) relief, continues until exhaustion of the judicial appeal process. See *Vargas*, 938 F.2d at 363–64.

■ After a review of the foregoing authorities we are persuaded that the Board's interpretation of the Act is entitled to deference and should be adopted as the law of this circuit. The rule in *Lok*, in the considered opinion of the Board, represents the best possible compromise between the rights of applicants for section 212(c) discretionary relief and the interest of the INS in promoting finality in deportability determinations and

general efficiency in implementing the provisions of the Act. Because we find nothing in the Act to contradict the Board's interpretation, we are of opinion that declining to credit that interpretation would amount to a failure to follow the admonition of the Supreme Court that such agency determinations are entitled to deference. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801 (quoting *Unemployment Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). Accordingly, we reject Nwolise's general challenge to the rule in *Lok* and hold that lawful permanent residence status within the meaning of 8 U.S.C. § 1101(a)(20) ends upon the alien's exhaustion of the appeal process of the order of deportation before the Board of Immigration Appeals. In this respect, we expressly refer to the opinion of the Third Circuit in *Katsis,* supra.

■ Nwolise's final challenge to the Board's decision depends on the fact that he raised his claim for section 212(c) relief in a timely motion to reopen his case, which he filed nine days after the Board's affirmance on the merits of the immigration judge's order of deportation. Nwolise argues that, even under the rule in *Lok,* the filing of a motion to reopen renders the Board's decision nonfinal and thus delays the termination of his lawful permanent resident status, thereby preserving his eligibility for discretionary relief. Here Nwolise relies primarily on some cases holding that the filing of a motion to reopen tolls the period allotted for filing an appeal to the U.S. Court of Appeals, much in the same way that the filing of motions for judgment notwithstanding the verdict and for a new trial toll the period for filing a notice of appeal under Fed.R.App.P. 4(a)(4). See the discussion and cases cited in *Pierre v. INS,* 932 F.2d 418 (5th Cir.1991).

We are of opinion, however, that those cases discussing the effect of a motion to reopen on the finality of a Board order for purposes of the appealability of Board orders do not serve as persuasive authority on the question now before us. The question whether a particular administrative order is final so as to be ripe for appeal to this court must be answered largely through analysis of the established body of law regarding appealability of judgments to this court; whether an order is final for purposes of determining the substantive consequences of that finality under immigration law must be determined with reference to immigration law as interpreted by the INS. Thus, even were we to agree with those cases holding that the filing of a motion to reopen renders nonfinal, for purposes of appeal to this court, an order of the Board,[6] we would not be persuaded that Nwolise's motion to reopen here took the Board's order out of the rule in *Lok.* The question at hand is whether the Board reasonably determined that the Board's affirmance of a deportation order effects a change in the alien's immigration status so as to make him thereafter ineligible for discretionary relief as a matter of substantive immigration law.

■ We are of opinion that the same factors that counsel deference to the Board's decision in *Lok* apply to the question of the effect of a motion to reopen. Again, where the Act is ambiguous or silent on a question such as this, it is squarely within the province of the Board to fashion a rule that best serves the efficient administration of the Act. The Board has determined that to allow aliens to apply for discretionary relief in the first instance by means of a motion to reopen would be to provide a redundant procedural avenue to aliens that would be subject to abuse as a tool for injecting further delay into already protracted deportation proceedings. We find this determination no less reasonable than the general rule announced in *Lok,* and accordingly we reject Nwolise's argument to the contrary.

### III

Nwolise's petition for review is accordingly *DENIED.*

---

6. We left this question open in *Oum v. INS,* 613 F.2d 51, 53 n. 2 (4th Cir.1980).