UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2008

(Argued: March 23, 2009                      Decided: August 14, 2009)

Docket No. 06-0202-ag

————————

FELIX ROTIMI,

*Petitioner*,

—v.—

ERIC H. HOLDER JR., AS ATTORNEY GENERAL OF THE UNITED STATES, DEPARTMENT OF HOMELAND SECURITY, JANET NAPOLITANO, SECRETARY, DEPARTMENT OF HOMELAND SECURITY, DISTRICT DIRECTOR, NEW YORK DISTRICT, IMMIGRATION AND CUSTOMS ENFORCEMENT,[*]

*Respondents*.

————————

B e f o r e:

FEINBERG, NEWMAN, and KATZMANN, *Circuit Judges*.[**]

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former Attorney General Alberto Gonzales, and Department of Homeland Security Secretary Janet Napolitano is automatically substituted for former Department of Homeland Security Secretary Michael Chertoff as respondents in this case.

[**] The Honorable Thomas J. Meskill, the third member of the panel that originally heard this case, passed away after we remanded to the Board of Immigration Appeals for a precedential opinion. Thereafter, Judge Newman was designated as the third member of this panel pursuant to Second Circuit Local Rule § 0.14(b).

———————————

Petition for review of a decision and order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's conclusion that Rotimi is statutorily ineligible for a waiver of inadmissibility and dismissing Rotimi's appeal. Because we hold that the BIA's interpretation of § 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h), is reasonable, the petition for review is DENIED.

Judge Newman concurs in a separate opinion.

Judge Katzmann concurs in a separate opinion, which is joined by Judge Feinberg.

———————————

> DANIEL SHABASSON, Pollack, Pollack, Isaac & DeCicco, Esqs., New York, N.Y., *for Petitioner*.
>
> DIONE M. ENEA, Special Assistant United States Attorney, *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., *for Respondents*.

———————————

PER CURIAM:

This case calls upon us to interpret the phrase "lawfully resided continuously" as it is used in § 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h), and as applied on the pending appeal. Petitioner Felix Rotimi, a lawful permanent resident, conceded in the proceedings below that he is removable, but he sought a waiver of inadmissibility pursuant to § 212(h). The Board of Immigration Appeals ("BIA") determined, based on its interpretation of "lawfully resided continuously," that Rotimi was ineligible for such relief. For the reasons stated below, we hold that the BIA's interpretation of "lawfully resided continuously" as it is used in § 212(h) and applied to Rotimi is reasonable. We therefore deny Rotimi's petition for review.

2

The facts of this case are generally undisputed. Felix Rotimi entered the United States on June 7, 1995, as a B-2 nonimmigrant visitor with permission to remain for six months. He applied for political asylum with the former Immigration and Naturalization Service ("INS") in September 1995, prior to the expiration of his visitor's visa. Pursuant to the regulations in effect at that time, Rotimi's application was assigned to an asylum hearing officer for adjudication. *See* 8 C.F.R. § 208.2(a) (1995). On May 17, 1996, the asylum office completed its review of Rotimi's application and referred it to an Immigration Judge ("IJ") for adjudication in deportation proceedings.[1]

In July 1996, while his deportation proceedings were on-going, but after the expiration of his visitor's visa, Rotimi married a United States citizen, who then filed a visa petition to classify Rotimi as an "immediate relative" under INA § 201(b), 8 U.S.C. § 1151(b). In conjunction with his wife's petition, Rotimi filed an application for adjustment of status pursuant to INA § 245, 8 U.S.C. § 1255. The visa petition was approved on November 18, 1996. Rotimi's applications for asylum and adjustment of status then remained pending before the IJ until March 20, 1997, at which time Rotimi withdrew his asylum application in favor of pursuing adjustment of status. On May 1, 1997, pursuant to agency practice, the government "use[d] its prosecutorial discretion

---

[1] The BIA characterized this as a denial of Rotimi's asylum application. *See In re Rotimi*, 24 I. & N. Dec. 567, 568 (B.I.A. 2008) ("On May 17, 1996, [Rotimi's] asylum application was denied and the DHS initiated deportation proceedings against [him]."). In fact, the asylum officer lacked the authority to deny Rotimi's application after Rotimi's nonimmigrant visa expired, *see* 8 C.F.R. § 208.14(b)(2) (1995), a point conceded by the government, *see* Letter from Dione M. Enea, Special Assistant U.S. Attorney, to Catherine O'Hagan Wolfe, Clerk of the Court (Mar. 31, 2009) ("Enea Letter"), at 2. Thus, the proper way to characterize the asylum officer's action is as a referral. *See In re L-K*, 23 I. & N. Dec. 677, 680 n.8 (B.I.A. 2004).

to terminate [Rotimi's deportation] proceedings to permit [him] to proceed with his application for adjustment of status before the INS rather than in immigration court."[2] Resp'ts Br. 6 n.3. The INS ultimately granted this application, and Rotimi became a lawful permanent resident on August 13, 1997.

On May 22, 2002, Rotimi was convicted of attempted criminal possession of a forged instrument in the second degree, in violation of N.Y. Penal Law §§ 110.00 and 170.25, and he received a sentence of five years' probation. In November 2002, upon his return from a brief trip abroad, Rotimi sought admission into the United States as a returning lawful permanent resident. Because Rotimi's conviction was for a crime involving moral turpitude, his inspection was "deferred." Thereafter, on June 13, 2003,[3] the Department of Homeland Security[4] ("DHS") filed a Notice to Appear with the Immigration Court charging Rotimi with being inadmissible as an alien who had committed a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I).

---

[2] Once an order to show cause had been issued in Rotimi's case, the IJ acquired exclusive jurisdiction to adjudicate Rotimi's application for adjustment of status in deportation proceedings. *See In re Roussis*, 18 I. & N. Dec. 256, 257 (B.I.A. 1982) (citing 8 C.F.R. § 245.2(a)(1)). The only way that the IJ could terminate those proceedings once they had started was upon request of the District Director of the INS. *Id.* at 258 (citing 8 C.F.R. § 242.7).

[3] There is a discrepancy regarding the date on which Rotimi's removal proceedings commenced. When Rotimi's case was originally before the agency, both the IJ and the BIA found that removal proceedings started on June 9, 2003, the date on which the Notice to Appear was issued. On remand, the BIA stated that the relevant date was June 13, 2003, the date on which the Notice to Appear was filed with the Immigration Court. We will assume the correct date is June 13, 2003, for purposes of this opinion, although we note that our analysis and conclusion would not change if the correct date were in fact June 9, 2003.

[4] The INS was reconstituted on March 1, 2003, as the Bureau of Immigration and Customs Enforcement and the Bureau of United States Citizenship and Immigration Services, both within the Department of Homeland Security. *See Rashid v. Mukasey*, 533 F.3d 127, 129 n.2 (2d Cir. 2008).

Appearing before the IJ, Rotimi conceded his removability and applied for a waiver of inadmissibility pursuant to INA § 212(h), 8 U.S.C. § 1182(h) (a "§ 212(h) waiver"). Section 212(h), however, provides that a lawful permanent resident is not eligible for such a waiver if, *inter alia*, "the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States." Rotimi argued that he had "lawfully resided continuously" in the United States for the seven years immediately preceding June 13, 2003, because he had been a nonimmigrant visitor, an applicant for asylum and adjustment of status, and a lawful permanent resident during that period.

The IJ disagreed. She explained that although Rotimi had lawfully resided in the United States for the six months following June 7, 1995, the date on which he entered the country as a nonimmigrant visitor, his lawful residence ended in December 1995 when his nonimmigrant visa expired. Furthermore, the IJ stated that Rotimi's "filing [of] an application for asylum in [September] 1995 did not exten[d] his non-immigrant stay in the United States [after his visa had expired] nor did it confer on [Rotimi] any lawfulness in his continued residence in the United States." Finally, the IJ ruled that Rotimi's application for adjustment of status "d[id] not make his overstayed time in the United States legal." The IJ therefore concluded that Rotimi's lawful residence in this country for purposes of § 212(h) began on August 13, 1997, the date he became a lawful permanent resident, thereby making him statutorily ineligible for a § 212(h) waiver.

Rotimi appealed this decision to the BIA, which affirmed the IJ in a nonprecedential decision by a single member. The BIA stated that "[a] period of lawful residence is one in which an alien has affirmatively been accorded the right or privilege of residing here and abides by the

rules associated with that right or privilege." Although the BIA recognized that Rotimi had filed his asylum application prior to the expiration of his nonimmigrant visa, it concluded that this "did not make [Rotimi's] continued residence in this country 'lawful' in any legal sense." Accordingly, the BIA held that Rotimi was statutorily ineligible for a § 212(h) waiver.

Rotimi filed a petition for review of the BIA's decision, and this Court heard oral argument in the case on December 11, 2006. Thereafter, we granted Rotimi's petition, vacated the BIA's decision, and remanded the case to give the BIA an opportunity to provide a precedential interpretation of the phrase "lawfully resided continuously." *See Rotimi v. Gonzales*, 473 F.3d 55, 58 (2d Cir. 2007). In particular, we explained that

> in construing "lawfully resided continuously" as used in § 212(h), we would benefit from the BIA's consideration of the term lawful—including its use in relation to asylum seekers and adjustment applicants—in other provisions of the INA and the implementing regulations, along with Congress's intent in providing for a § 212(h) waiver. In reviewing the BIA's definition of lawful in § 212(h), we would also benefit from an explanation of the source of the definition and analysis as to whether an asylum seeker or an adjustment applicant meets that definition of "lawful."

*Id.* The panel retained jurisdiction to decide any appeal following remand. *See id.*

On remand, the BIA issued a precedential opinion in which it interpreted the phrase "lawfully resided continuously." *See In re Rotimi*, 24 I. & N. Dec. 567 (B.I.A. 2008). At the outset of its opinion, the BIA explained that it was not attempting to adopt "a comprehensive definition of this statutory language" because an expansive interpretation was not necessary to resolve this particular case. *See id.* at 568, 571. Rather, the BIA addressed the specific question of "whether [Rotimi's] 13 months as an applicant for adjustment of status and his earlier (and overlapping) time as an applicant for asylum count toward establishing that he has 'lawfully

6

resided continuously' for 7 years before his removal proceedings were initiated." *Id.* at 570.

As requested, the BIA's analysis set forth the rationale for its interpretation of § 212(h). As an initial matter, the BIA acknowledged that the phrase "lawfully resided continuously" is unique to § 212(h) and that its meaning is ambiguous. *See id.* at 571. Although it recognized the "range of possible constructions it may be given," the BIA reasoned that because "Congress has used the phrase 'lawfully resided' in a technical immigration provision designed to waive criminal grounds of inadmissibility set forth in the Immigration and Nationality Act[,] . . . the meaning of the phrase needs to be derived in the context of the immigration laws." *Id.* The BIA then identified four specific sources upon which it relied in construing the statute.

First, the BIA examined the legislative history of § 212(h), which provides in relevant part that the "managers intend that the provisions governing continuous residence set forth in INA section 240A as enacted by this legislation shall be applied as well for purposes of waivers under INA section 212(h)." H.R. Rep. No. 104-828, at 228 (1996) (Conf. Rep.). The BIA stated that this history, "while not extensive, lends some support to the proposition that an alien's application for lawful status or other benefit that might not entail a 'status' must actually be approved before his or her residence in this country will be considered lawful for section 212(h) purposes." *In re Rotimi*, 24 I. & N. Dec. at 572.

Second, the BIA looked to INA § 101(a)(20), which defines the phrase "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). The agency asserted that this supported the view that an alien does not become a lawful permanent resident simply by applying

for that status. *See In re Rotimi*, 24 I. & N. Dec. at 573–74.

Third, the BIA relied on the *Merriam-Webster's Collegiate Dictionary*, which defines "lawful" as "being in harmony with the law" or "constituted, authorized, or established by the law." *Id.* at 574 (internal quotation marks omitted). From this, the BIA concluded that for an alien's residence to be lawful, "it must be authorized or in harmony with the law, which requires some formal action beyond a mere request for authorization or the existence of some impediment to actual physical removal." *Id.*

Fourth, the BIA examined case law, which it contended draws an important distinction between merely being an applicant for a privilege to remain in this country and actually being granted that privilege. *See id.* at 574–76. The BIA acknowledged that two of the cases upon which it relied – *In re Lok*, 18 I. & N. Dec. 101 (B.I.A. 1981), and this Court's decision in *Tim Lok v. INS*, 681 F.2d 107 (2d Cir. 1982) – analyzed the "lawful domicile" requirement of former INA § 212(c). It explained, however, that although § 212(h) contains no domicile requirement,

> based on the long-standing construction of the term "lawful" in the *Lok* decisions, we think that there is a distinction to be drawn between permitting an alien's presence in this country for a limited purpose and legalizing his or her stay. It is this distinction that provides the primary basis for our refusal to count [Rotimi's] time spent as an applicant for benefits as periods during which he "lawfully resided" here for purposes of a section 212(h) waiver.

*In re Rotimi*, 24 I. & N. Dec. at 575–76.

In light of these sources, the BIA concluded that any lawfulness associated with Rotimi's residence in the United States ended when his nonimmigrant visa expired in December 1995. *Id.* at 577. Furthermore, it stated that Rotimi's "submission of asylum and adjustment applications did not change the fact that his status as a nonimmigrant visitor had ended. Nor did filing such

8

applications give [Rotimi] lawful residence here, as he was merely an applicant for benefits with, at best, a temporary reprieve while his applications were adjudicated." *Id.* Accordingly, the BIA concluded that Rotimi's continuous lawful residence began on August 13, 1997, when he became a lawful permanent resident, and it held that he was statutorily ineligible for a § 212(h) waiver because his lawful residence was fourteen months short of the required seven years.

Following the issuance of the BIA's opinion, Rotimi filed a motion for this Court to restore the mandate in this case and consider the question raised in his initial petition for review – whether the BIA erred by holding that Rotimi had not "lawfully resided continuously" in the United States for a period of at least seven years immediately preceding June 13, 2003. It is to this question that we now turn.

## DISCUSSION

Rotimi was deemed inadmissible because he had been convicted of committing a crime involving moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). In such circumstances, the Attorney General has discretion to waive inadmissibility where, as here, the alien is the spouse of a United States citizen, and "the alien's denial of admission would result in extreme hardship" to that United States citizen spouse. *Id.* § 1182(h)(1)(B). Such a waiver is not available, however, to an alien "who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States." *Id.* § 1182(h).

Rotimi's removal proceedings were initiated on June 13, 2003. Thus, to be eligible for a § 212(h) waiver, he must have lawfully resided continuously in the United States since at least

9

June 13, 1996. There is no dispute that Rotimi lawfully resided in the United States after August

13, 1997, the date on which he became a lawful permanent resident. Consequently, our analysis

focuses on whether Rotimi lawfully resided here between June 13, 1996, and August 13, 1997.

In considering this question, we are guided by the familiar two-step analysis set forth in

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See*

*G & T Terminal Packaging Co. v. U.S. Dep't of Agric.*, 468 F.3d 86, 95 (2d Cir. 2006) ("It is

firmly established that we review under the *Chevron* standard an agency's binding and generally

applicable interpretation of a statute that it is charged with administering when that interpretation

is adopted in the course of a formal adjudicatory proceeding." (citing *United States v. Mead*

*Corp.*, 533 U.S. 218, 230 n.12 (2001))); *see also Freeman v. Burlington Broadcasters, Inc.*, 204

F.3d 311, 322 (2d Cir. 2000). Under the *Chevron* analysis, we first ask "whether Congress has

directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end

of the matter; for the court, as well as the agency, must give effect to the unambiguously

expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. If, however, "the statute is silent

or ambiguous with respect to the specific issue, the question for the court is whether the agency's

answer is based on a permissible construction of the statute." *Id.* at 843. We "need not conclude

that the agency construction was the only one it permissibly could have adopted to uphold the

construction, or even the reading the court would have reached if the question initially had arisen

in a judicial proceeding." *Id.* at 843 n.11. Rather, the Court will defer to the agency's

interpretation as long as that interpretation is "'reasonable.'" *Cohen v. JP Morgan Chase & Co.*,

498 F.3d 111, 116 (2d Cir. 2007) (quoting *Chevron*, 467 U.S. at 844).

The first step of the *Chevron* analysis is straightforward here. Congress has not defined

10

the phrase "lawfully resided continuously" anywhere in the INA. Given the range of possible interpretations that might apply to it, we agree with the BIA that this phrase is ambiguous. *See In re Rotimi*, 24 I. & N. Dec. at 571; *see also Quinchia v. U.S. Attorney Gen.*, 552 F.3d 1255, 1259 (11th Cir. 2008) ("[W]e find that the 'lawfully resided continuously' requirement in 212(h) is ambiguous"); *Yepez-Razo v. Gonzales*, 445 F.3d 1216, 1218 (9th Cir. 2006) ("We observe at the outset that the precise meaning of 'lawfully resided continuously' in section 212(h) is unclear"). We therefore proceed to the second step of the *Chevron* analysis.

The BIA concluded that Rotimi "did not 'lawfully' reside in the United States during those periods in which he was an applicant for asylum or for adjustment of status and lacked any other basis for claiming lawful residence." *In re Rotimi*, 24 I. & N. Dec. at 568; *see also id.* at 574 ("The lawfulness of an alien's residence stems from the grant of a specific privilege to stay in this country, not the mere fact that he or she is an applicant for such a privilege."). The *Chevron* framework sharply constrains this Court. As noted above, even if we would have interpreted the statute differently if the question had arisen first in a judicial proceeding, we are without authority to substitute that interpretation for an agency's, if the agency's view is reasonable. Given the circumstances of this case, we hold that the BIA's interpretation of § 212(h) is reasonable and therefore defer to it. *See Quinchia*, 552 F.3d at 1259. Consequently, Rotimi is ineligible for a § 212(h) waiver because he did not lawfully reside continuously in the United States for the period between June 13, 1996, and August 13, 1997.[5]

---

[5] We note that the BIA did not attempt to craft an interpretation of "lawfully resided continuously" that would apply to all cases in which questions about the lawfulness of an alien's residence might arise. *See In re Rotimi*, 24 I. & N. Dec. at 568, 571. Thus, we need not consider whether a lawful status might be accorded an alien if he or she applied for a lawful status early in a substantial period of some other lawful status, for example, three months into a two year period

11

## CONCLUSION

For the foregoing reasons, Rotimi's petition for review is DENIED.

---

for which an employment visa was issued, and the BIA inexcusably postponed decision on the application until after the expiration of the initial lawful status.

Rotimi v. Holder
Docket No. 06-0202

JON O. NEWMAN, Circuit Judge, concurring:

I concur in the Court's opinion and judgment, but add these brief additional thoughts. Rotimi's case is not an unsympathetic one. He entered the country lawfully (although that lawfulness has long since expired), he has been here now for 14 years, he is married to a United States citizen, and the basis for his removal, a conviction for forgery in the second degree, seems rather minor in significance. Perhaps he is a candidate for a private bill.[1] Or perhaps the Government, wholly apart from the statutory waiver provision of section 212(h), might simply exercise its discretion to permit Rotimi to remain here along with the millions of others who are not removed despite their lack of a lawful status, some of whom are still here ten or more years after a removal order. See, e.g., Chion Yin Kong v. Holder, No. 08-5277, 2009 WL 1635783 (2d Cir. June 11, 2009) (adjudicating denial of petition to reopen filed twelve years after issuance of removal order); Khatun v. Filip, No. 08-0493, 2009 WL 180297 (2d Cir. Jan. 27, 2009) (same, ten years); Bao Li Xu v. Mukasey, No. 07-3974, 2008 WL 1994991 (2d Cir. May 7, 2008) (same, twelve years).

Whether or not the political branches can or will permit Rotimi

_____

[1]See Congressional Research Service, Private Immigration Legislation (Aug. 9, 2005), available at http://www.ilw.com/immigdaily/news/2005,0819-crs.pdf (last visited June 16, 2009).

to remain in this country, the judicial branch has no authority to render him eligible for section 212(h) relief by rejecting the reasonable statutory interpretation that the BIA made in this case when it concluded that the intervals in which his two applications for lawful status were pending did not count toward lawful residence.

06-0202-ag
Rotimi v. Holder

KATZMANN, *Circuit Judge*, with whom FEINBERG, *Circuit Judge*, joins, concurring:

I agree with the Court that the *Chevron* doctrine requires us to defer to the BIA's interpretation so long as it is reasonable, even if that interpretation is not "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.11 (1984). Writing on a clean slate, I would have interpreted "lawfully resided continuously" to include the period between June 13, 1996, and August 13, 1997, when Rotimi resided in the United States while his applications for asylum and (later) adjustment of status were pending. Indeed, as I discuss below, in the narrow circumstances of this case – (1) Rotimi filed an application for lawful status while residing in the United States in a lawful status; (2) he never was subject to a deportation order at any time prior to the completion of the administrative proceedings that followed the submission of that application; and (3) the immigration authorities ultimately granted Rotimi lawful permanent resident status at the conclusion of those administrative proceedings – I believe the most sensible conclusion would be for Rotimi to be statutorily eligible for a § 212(h) waiver.

The BIA concluded that Rotimi's residence in the United States during the relevant time period – June 1996 to August 1997 – was not "lawful" because it did not stem from the grant of a specific privilege to be here. Rather, according to the BIA, Rotimi's continued residence in this country after his nonimmigrant visa expired in December 1995 merely reflected the government's indulgence of his presence pending the adjudication of his applications for asylum and adjustment of status. The agency explained that the distinction between being an applicant for certain privileges and being granted those privileges was the "primary basis" for its decision

and was derived from *In re Lok*, 18 I. & N. Dec. 101 (B.I.A. 1981), and *Tim Lok v. INS*, 681 F.2d 107 (2d Cir. 1982). However, I believe that the circumstances in *Tim Lok* differed in one significant respect from the circumstances of this case. In *Tim Lok*, although the alien entered the country lawfully, he overstayed his visa *and was ordered deported*. *See Tim Lok*, 681 F.2d at 110; *see also Tim Lok v. INS*, 548 F.2d 37, 38 (2d Cir. 1977). Thereafter, the government did not enforce that order because Lok began to pursue avenues of relief that, if granted, would have permitted him to stay in the country. Lok's continued presence in the United States therefore truly reflected the government's grace because the government could have deported Lok at any time.

By contrast, Rotimi was never subject to a deportation order at any time between when he lawfully entered the country and when he became a lawful permanent resident. Thus, he continued to reside in the United States after his nonimmigrant visa expired because the immigration authorities *could not* deport him. *See, e.g.*, 8 U.S.C. § 1252 (1996) (providing the process for deporting aliens); Letter from Dione M. Enea, Special Assistant U.S. Attorney, to Catherine O'Hagan Wolfe, Clerk of the Court (Mar. 31, 2009), at 2 (characterizing a final order of deportation as "a prerequisite to the removal of any alien"). In other words, Rotimi's continued residence was not a reflection of the government's mere tolerance of his presence but rather was attributable to the fact that the immigration agency was legally barred from deporting him. Consequently, although the *Tim Lok* decisions draw the distinction between being an applicant for a privilege or benefit and being granted that privilege or benefit, those decisions do not appear to support the application of that distinction in the circumstances of this case. Given that this distinction served as the "primary basis" for the BIA's decision in this case, I find it

2

troubling that the BIA did not adequately explain why this difference in circumstances was unimportant.

Furthermore, I do not believe that any of the other sources relied upon by the BIA adequately explain why, in the circumstances presented here, lawful residence follows only from the grant of a specific privilege to remain in the country. As an initial matter, the scant legislative history of § 212(h) offers no insight into congressional intent. Moreover, the dictionary definition of "lawful" does not support the BIA's interpretation where, as here, the alien's presence is in fact "authorized or in harmony with the law."

Finally, although the agency relied on *United States v. Ochoa-Colchado*, 521 F.3d 1292 (10th Cir. 2008), to support the proposition that the "lawfulness of an alien's residence stems from the grant of a specific privilege to stay in this country, not [from] the mere fact that [the alien] is an applicant for such a privilege," *In re Rotimi*, 24 I. & N. Dec. at 574, that case, unlike this one, involved an alien who was in the country illegally when he applied for the privilege to remain. *See Ochoa-Colchado*, 521 F.3d at 1293. Indeed, given that difference in circumstances, it appears that *Ochoa-Colchado* counsels against the interpretation of § 212(h) rendered by the BIA in this case.

In *Ochoa-Colchado*, the Tenth Circuit held that an alien was not legally or lawfully in the United States for purposes of 18 U.S.C. § 922(g)(5)(A) simply because he had a pending application for adjustment of status. *See* 521 F.3d at 1298. In explaining why, the court relied on *United States v. Lucio*, 428 F.3d 519, 525 (5th Cir. 2005), a case in which the Fifth Circuit characterized "the status of an alien whose application is pending as a sort of 'stasis.'" *See Ochoa-Colchado*, 521 F.2d at 1298 (noting that this was "as good a description as can be found

3

in any case"). Under this reasoning, the outcome in *Ochoa-Colchado* logically followed from the circumstances presented – the illegal alien's status would remain in "stasis," *i.e.*, would remain unlawful, while his application was pending. By contrast, in this case, where Rotimi's residence and status were lawful at the time his administrative proceedings commenced, the "stasis" approach would suggest that his residence and status would remain lawful pending the outcome of those proceedings. Although I express no view as to whether the status of an alien with a pending application remains in stasis, I believe that the absence of an explanation by the BIA as to why the "stasis" approach does not undermine its conclusion in this case certainly calls into question its reliance on *Ochoa-Colchado*.

Upon close analysis, it appears that what drove the BIA's interpretation of § 212(h) in this case was its concern that, were lawful residence to exist merely because there was some legal impediment to an alien's removal, then "the vast majority of aliens in the United States who are entitled to a removal hearing and the associated appeal rights could claim lawful residence based on a combination of physical presence and some barrier to removal." *In re Rotimi*, 24 I. & N. Dec. at 573. Although it is important to be sensitive to this concern, I am not sure that it is warranted in the narrow circumstances of this case, where the alien filed his asylum application while residing in the United States in a lawful status and ultimately was granted lawful permanent resident status at the conclusion of the administrative proceedings that followed. I would also note that to conclude that Rotimi is statutorily eligible for a § 212(h) waiver would not call into question the Attorney General's ability to exercise his or her discretion to either grant or deny an application for a § 212(h) waiver on remand.

Moreover, the BIA's disregard of these circumstances – where the alien filed his asylum

4

application while residing in a lawful status in the United States and ultimately was granted lawful permanent resident status – could lead to an unreasonable interpretation of "lawfully resided continuously" because that interpretation could result in absurd and unjust consequences. *See Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 386 (2d Cir. 2004) ("'A construction of a statute leading to unjust or absurd consequences should be avoided.'" (alteration omitted) (quoting *Quinn v. Butz*, 510 F.2d 743, 753 (D.C. Cir. 1975))); *see also Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007) ("[I]t is an elemental principle of statutory construction that an ambiguous statute must be construed to avoid absurd results.").

In construing § 212(h), the BIA explained that an alien's status at the time he or she files an application for a privilege or benefit is irrelevant to the analysis because the alien's residence is not lawful if he or she is merely an *applicant* for a privilege or benefit. It follows from this, however, that where, as here, an alien files an application while in a lawful status, the alien's eligibility for a § 212(h) waiver might turn on how quickly the immigration authorities adjudicate that application. For example, if the agency granted the application prior to the expiration of the alien's lawful status, then the alien later might be eligible for a § 212(h) waiver. If, however, the agency granted the application after the alien's lawful status had expired, then the alien would not be eligible for such a waiver. This is precisely the type of absurd and unjust consequence that should be avoided when interpreting statutes. *Cf. Lockhart v. Napolitano*, 561 F.3d 611, 620–21 (6th Cir. 2009) (rejecting an interpretation of the "immediate relative" provision of the INA where "either the timing of the Secretary's adjudication of the [immediate relative] petition or the timing of the citizen-spouse's death would control the outcome of immediate relative petitions," because such an interpretation would lead to an absurd and unjust result).

5

That said, Rotimi does not quite present such circumstances, because the application that the agency ultimately granted – his adjustment of status application – was filed after his nonimmigrant visa had expired.[1]  In light of this, I return to the core issue presented by this case – whether *Chevron* requires the court to defer to the BIA's interpretation of "lawfully resided continuously."  Although I respectfully disagree with the agency, and I would interpret the statute differently were I called on to do so in the first instance, I cannot say that the BIA's interpretation in the case before us is unreasonable.  *See Chevron*, 467 U.S. at 844.  Consequently, I conclude that I must defer to the agency's interpretation of § 212(h).  In doing so, I urge the immigration agency to reconsider its interpretation of the statutory scheme.  Congress, for its part, may wish to give further direction of the phrase "lawfully resided continuously in the United States" as used in § 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h).

---

[1] Although the record does not permit me to confirm this, I suspect that the government played a significant role in Rotimi's decision to withdraw his asylum application in favor of pursuing adjustment of status.  I draw this conclusion based on the fact that (1) Rotimi abandoned his asylum claim in March 1997 after his asylum application had been pending for approximately eighteen months, (2) the agency sought to terminate his deportation proceedings within approximately forty days after he withdrew his asylum application, and (3) the agency granted Rotimi's adjustment application less than four months after that.