# In re Po Shing YEUNG, Respondent

File A40 430 178 - Sneads

*Decided November 27, 1996*
*Decided October 7, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h)(1994), *as amended by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 348(a), 110 Stat. 3009-546, 3009-639 (enacted Sept. 30, 1996) ("IIRIRA"), an alien who has been admitted to the United States as a lawful permanent resident and who has been convicted of an aggravated felony since the date of such admission is ineligible for a waiver.

(2) Section 348(b) of the IIRIRA provides that the amendments to section 212(h) of the Act apply to aliens in exclusion or deportation proceedings as of September 30, 1996, the date of enactment of the IIRIRA, unless a final administrative order of deportation has been entered as of such date.

(3) Where a court reverses an order of deportation by the Board of Immigration Appeals, the order is nullified and therefore is not final.

(4) An aggravated felon whose order of deportation had been reversed by a court of appeals and was pending on remand before the Board on September 30, 1996, did not have a final administrative order of deportation on that date, so the restrictions on eligibility for a section 212(h) waiver apply.

(5) Any presumption against the retroactive application of a statute does not apply where Congress has clearly stated that a statute is to be applied retroactively.

FOR RESPONDENT: Ronald Haber, Esquire, Miami, Florida

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Ronald G. Sonom, General Attorney

## BEFORE THE BOARD

(November 27, 1996)

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, COLE, ROSENBERG, MATHON, and GUENDELSBERGER, Board Members.

MATHON, Board Member:

This case was last before the Board on January 4, 1994, when we dismissed the respondent's appeal from an Immigration Judge's October 21, 1993, decision in the case. In our prior decision, we held that the respondent was not eligible for a waiver under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (1994), because he had not departed from and returned to the United States since the time of the 1993 conviction which formed the basis for his deportability.

The United States Court of Appeals for the Eleventh Circuit subsequently held that our interpretation of section 212(h) was unconstitutional. *Yeung v. INS*, 76 F.3d 337 (11th Cir. 1996). The court found that the Board's interpretation of that section of the Act violated the respondent's Fifth Amendment equal protection rights because it wrongly differentiated between aliens such as the respondent herein who do not depart the United States and reenter after becoming deportable, and those who do depart and reenter after becoming deportable. We were instructed to reconsider our decisions in *Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980), *Matter of Parodi*, 17 I&N Dec. 608 (BIA 1980), and this case "in order to make them consistent with the language of the statute." *Yeung v. INS, supra*, at 341.[1]

Since the time that the parties briefed the issues in this case, as those issues were set forth by the court of appeals, Congress has acted to clearly bar this respondent from obtaining section 212(h) relief. Under section 348(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639 ("IIRIRA"), section 212(h) of the Immigration and Nationality Act has been amended to provide, in pertinent part, that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony . . . ."

The respondent in this case is a native of Hong Kong and a citizen of the United Kingdom who entered the United States on February 24, 1988, as a lawful permanent resident. He was convicted in the State of Florida on February 3, 1993, of the offense of attempted manslaughter with a knife. The respondent was sentenced to 5 years' imprisonment for this crime. He was subsequently placed in deportation proceedings and was found deportable based on his conviction.

Under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (1994), *as amended by* IIRIRA § 321(a)(3), 110 Stat. at 3009-627, an aggravated felony is defined to include a crime of violence for which the term of

---

[1] The court's original decision in this case was dated August 17, 1995. Upon the Government's petition for rehearing, the court modified its earlier decision by specifically directing us to "reconsider and construe § 212(h) consistent with the competing statutory, constitutional, and policy interests at stake." *Yeung v. INS*, *supra*, at 341.

imprisonment is at least 1 year. The new definition of the term applies to convictions entered before, on, or after the date of enactment. IIRIRA § 321(b), 110 Stat. at 3009- 628. The respondent in this case has been convicted of a violent crime and sentenced to over a year's imprisonment for the crime. He has thus been convicted of an aggravated felony.[2]

There is no question that the new version of section 212(h) applies to the present case, as the statute specifically states that the amendment to that provision "shall be effective on the date of the enactment of this Act and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date unless a final administrative order in such proceedings has been entered as of such date." IIRIRA § 348(b), 110 Stat. at 3009-639.

Nothing could be clearer than Congress' desire in recent years to limit, rather than extend, the relief available to aliens who have been convicted of crimes. In addition to the IIRIRA, this intent was recently seen in the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, which relate to criminal aliens. Other instances of Congress' concern with such aliens, and its desire to limit the relief available to them, are contained in the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305, the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, and the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207.

Congress has almost unfettered power to decide which aliens may come to and remain in this country. This power has been recognized repeatedly by the Supreme Court. As the Court stated in *Fiallo v. Bell*, 430 U.S. 787 (1977), "This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Id.* at 792 (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)); *see also Reno v. Flores*, 507 U.S. 292 (1993); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).

As we have seen, Congress has now spoken on the availability of section 212(h) relief for lawful permanent residents who have been convicted of aggravated felonies. The new legislation supersedes the decision of the court of appeals in this case. It obviates the need for us to decide here whether an alien who has not departed the United States since the time of his conviction may ever qualify for that relief. As there can be no doubt that the respondent is not eligible for the relief he seeks, we need not decide today which categories of aliens may now be eligible for a section 212(h) waiver.

For these reasons, the respondent's appeal must and will be dismissed.

**ORDER:**     The appeal is dismissed.

---

[2] We note, moreover, that since the respondent was sentenced to 5 years' imprisonment for his offense, his crime would have been considered an aggravated felony even under the definition existing at the time of his conviction. The definition of aggravated felony then included crimes of violence for which the term of imprisonment imposed was at least 5 years.

Board Members Gustavo D. Villageliu and Lauri S. Filppu did not participate in the decision in this case.

## BEFORE THE BOARD
(October 7, 1997)

FOR RESPONDENT: Ronald Haber, Esquire, Miami, Florida

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Thomas F. Baxley, Assistant District Counsel

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, COLE, MATHON, and GUENDELSBERGER, Board Members. Concurring and Dissenting Opinion: ROSENBERG, Board Member.

HURWITZ, Board Member:

This case was last before us on November 27, 1996, when we found that the respondent was ineligible for a waiver under section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (1994). In so holding, we concluded that section 348(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-639 ("IIRIRA"), which bars an alien who has been convicted of an aggravated felony from obtaining a section 212(h) waiver, applies to aliens who were in exclusion or deportation proceedings on the date of enactment of the IIRIRA. *Matter of Yeung*, 21 I&N Dec. 610 (BIA 1996). The respondent has now filed a motion to reconsider. The motion will be denied.

In his motion, the respondent argues that the new version of section 212(h) does not apply to him because a final administrative order was entered by us in this case on January 4, 1994. As support for his argument, the respondent cites to section 348(b) of the IIRIRA. That section states that section 348(a) of the statute "shall be effective on the date of the enactment of this Act and shall apply in the case of any alien who is in exclusion or deportation proceedings as of such date *unless a final administrative order in such proceedings has been entered as of such date.*" (Emphasis added.) Citing to *Matter of Lok*, 18 I&N Dec. 101 (BIA 1981), *aff'd on other grounds*, 681 F.2d 107 (2d Cir. 1982), the respondent contends that our January 4, 1994, decision was a final administrative order and that the caveat to section 348(b) therefore applies.

We do not agree with the respondent's position on the issue presented. As recognized in *Matter of Lok, supra*, where a court reverses the Board's final order of deportation, the Board's order is nullified. *Id*. at 107; *see also Katsis v. INS,* 997 F.2d 1067, 1075 (3d Cir. 1993), *cert. denied,* 510 U.S. 1081 (1994) (holding that a court's reversal of a Board order nullifies that order). The respondent has cited to no authority to the contrary, and we find that the

rationale of these cases applies here. The United States Court of Appeals for the Eleventh Circuit issued decisions in this case on August 17, 1995, and January 2, 1996, reversing our January 4, 1994, decision, and remanding the case for further proceedings. *Yeung v. INS*, 61 F.3d 883 (11th Cir. 1995), *modified on reh'g*, 76 F.3d 337 (11th Cir. 1996). Thus, at the time of enactment of the IIRIRA, this case was open before us upon remand from the court, and there was no final order of deportation within the meaning of section 348(b) of the IIRIRA.

The respondent also argues in his motion that application of section 348(a) of the IIRIRA to his case would deprive him of due process and would violate the "traditional presumption against retroactive application of a statute." This argument is unavailing. Any presumption against retroactivity cannot apply where Congress has clearly stated that a statute is to be applied retroactively. Here, Congress did make such a clear statement, in section 348(b), as cited above. Whether Congress' decision to apply the section 212(h) restrictions to pending cases violates this respondent's constitutional right to due process of law is not an argument we have authority to address. We must apply the law as written. *See Matter of Gonzalez-Camarillo,* 21 I&N Dec. 937 (BIA 1997), and cases cited therein.

For these reasons, the respondent's motion to reconsider will be denied.

**ORDER:**     The motion to reconsider is denied.

Board Members Gustavo D. Villageliu and Lauri S. Filppu did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully concur in part and dissent in part.

The respondent has moved for reconsideration of our decision in *Matter of Yeung,* 21 I&N Dec. 610 (BIA 1997). He argues in support of his motion that the current version of section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h) (1994), *as amended by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 348(a), 110 Stat. 3009-546, 3009-639 ("IIRIRA") upon which we relied in issuing that decision, does not govern his case. *See* 8 C.F.R. § 3.2(b) (1997).

The respondent contends that the current terms of the statute pertaining to a waiver of inadmissibility under current section 212(h) are inapplicable to him because the specific effective date provision contained in section 348(b) of the IIRIRA limits application of the amended section 212(h) of the Act where there has been a final administrative order as of the IIRIRA's effective date. IIRIRA § 348(b). He recognizes that the express language of section 212(h) now precludes eligibility for the waiver in the cases of some persons who, since the date of their admission as lawful permanent residents, have been convicted of an offense classified as an aggravated felony. He argues,

however, that the current terms of section 212(h) of the Act cannot apply retroactively to him under the language of the statute, because a final administrative order was entered in his case on January 4, 1994, prior to the enactment of the IIRIRA. *Id.*

The respondent emphasizes that the United States Court of Appeals for the Eleventh Circuit found our decision denying him the opportunity to seek and be considered for a section 212(h) waiver to be unconstitutional. *Yeung v. INS,* 61 F.3d 833 (11th Cir. 1995). He asserts correctly that, on rehearing, the court remanded for us to square our previous assessment of his statutory ineligibility to apply for the waiver in the context of deportation proceedings, with our prior precedent decisions interpreting the statute to allow those who actually departed and reentered the United States after becoming deportable to apply. *See Yeung v. INS*, 76 F.3d 337 (11th Cir. 1996). He urges us to recognize that the treatment found objectionable by the court of appeals occurred when we upheld the decision of the Immigration Judge denying him the opportunity to seek a waiver under the former version of section 212(h), and that our decision in *Matter of Yeung, supra*, perpetuated that erroneous denial. He argues that both determinations violate his right to a fair hearing consistent with due process of law.

As the respondent's petition for review of our January 4, 1994, order had been granted by the court of appeals, and his case had been remanded and was pending before us on September 30, 1996, I tend to concur with the majority's conclusion in this case that it cannot be reasonably said that a final administrative order existed on September 30, 1996, exempting the respondent from the application of amended section 212(h) to his case. *Cf. Matter of Pineda*, 21 I&N Dec. 1017 (BIA 1997) (holding that subsequent action on an administrative order which had been final on September 30, 1996, disturbs the finality of the administrative order for purposes of the statutory amendment); *see also id.* (Guendelsberger, joined by Schmidt and Rosenberg, dissenting) (finding that the statutory amendment focuses on the administrative order as it existed on September 30, 1996). I do not find that to be dispositive, however, of the applicability of the current terms of section 212(h) to the respondent.

I dissent from the majority decision, as I find it unreasonable and in violation of due process for us to apply the current version of section 212(h) of the Act in determining the respondent's eligibility for a waiver *now*, when it was our unconstitutional application of the law as we had *then* developed it that foreclosed consideration of his section 212(h) waiver request previously before the Immigration Judge. For reasons discussed below, I conclude that an equitable remedy is both available and required by our prior error. I would remand the respondent's case to the Immigration Judge for submission and consideration of an application for a waiver under the terms of section 212(h) of the Act as it existed at the time that the respondent was found by the

Eleventh Circuit Court of Appeals to have been unconstitutionally deprived of an opportunity to apply for such relief.

## I. THE BACKGROUND OF MATTER OF YEUNG

The respondent was admitted to the United States from Hong Kong as a lawful permanent resident on February 24, 1988. He and his wife, who is a lawful permanent resident, married in 1990 and have a child born in the United States on April 20, 1992. In 1993, the respondent was convicted of attempted manslaughter and sentenced to 5 years in prison. Under the statute in effect both then and now, this offense constitutes a crime involving moral turpitude, as well as a crime of violence amounting to an aggravated felony.

At a 1993 deportation hearing, the respondent conceded deportability as charged under section 241(a)(2)(A)(I) of the Act, 8 U.S.C. § 1251(a)(2)(A)(I) (1994), as an alien convicted of a crime of moral turpitude committed within 5 years of entry. During the deportation hearing, the respondent attempted to apply for a section 212(h) waiver based upon his marriage to a lawful permanent resident and his United States citizen child, each of whom, it was contended, would suffer hardship were he to be deported to Hong Kong.

### A. Access to a Waiver Under Former Section 212(h) by Certain Respondents in Deportation Proceedings

At the time of the underlying proceedings, a waiver of specified grounds of inadmissibility was available under section 212(h) of the Act. This provision afforded a waiver in the cases of qualifying persons who were excludable under the statutory provisions involving moral turpitude, multiple criminal convictions, activity related to prostitution and commercialized vice, assertion of immunity from prosecution, or a violation relating to a controlled substance if it relates to a single offense of simple possession of 30 grams or less of marijuana. *See* sections 212(a)(2)(A)(i)(I), (B), (D), and (E) of the Act and section 212(a)(2)(A)(i)(II) (as limited by the terms of section 212(h)).

The Board recognized that, in certain cases, it was fair and reasonable to allow a respondent in deportation proceedings to take advantage of this waiver of inadmissibility. In *Matter of Sanchez,* 17 I&N Dec. 218 (BIA 1980), we held that an equitable interpretation of the statutory language of section 212(h) of the Act required extending access to a waiver under that section to certain respondents in deportation proceedings. The respondent in that case was charged in deportation proceedings with having committed a crime involving moral turpitude within 5 years after entry under former section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4)(1976), the same charge of deportability involved in the instant case.

We stated explicitly in *Matter of Sanchez, supra*, that "the fact that the respondent was not inadmissible at the time of his original entry does not bar

him from seeking 212(h) relief" when there has been an entry subsequent to the act giving rise to the charge of deportability, *id*. at 222-23, reasoning that "[a]liens who become inadmissible after an original lawful entry may later be excluded from the United States if they depart and seek to reenter, and they may also at such later date be eligible for various waivers of excludability," *id*. at 222. We also clarified that it was not important that the charge was lodged as a substantive criminal ground of deportability, rather than under section 241(a)(1) (establishing deportability in the case of one inadmissible at entry), in reliance on one of the criminal grounds for excludability. *Id*. at 222 (citing as "an analogous case involving the 212(c) waiver," *Matter of Tanori,* 15 I&N Dec. 566, 568 (BIA 1976) (holding that "a waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible because of the same facts which form the basis of his deportability"), *modified, Matter of Wadud,* 19 I&N Dec. 182, 185 n.3 (BIA 1984) (limiting that language to situations where the ground of deportation charged is also a ground of inadmissibility)).

We also have recognized the propriety of access to section 212(h) waiver in the context of deportation proceedings involving an applicant who never departed and returned to the United States. *See Matter of Parodi*, 17 I&N Dec. 608 (BIA 1980) (finding a permanent resident alien who had not departed and reentered subsequent to the conviction for a deportable offense eligible to apply for a waiver under section 212(h) in conjunction with an application for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (1976)); *see also Matter of Gonzalez-Camarillo*, 21 I&N Dec. 937 (BIA 1997) (Rosenberg, dissenting) (digesting prior precedent decisions acknowledging that an individual seeking adjustment of status in a deportation proceeding is assimilated to the position of one seeking admission to the United States).

Notwithstanding this precedent, the Board affirmed the ruling of the Immigration Judge, reiterating that a waiver under section 212(h) of the Act was available in only two situations in deportation proceedings: (1) where the respondent charged with being deportable had literally departed and returned to the United States subsequent to his conviction for a deportable offense which would have rendered him inadmissible, and (2) where the respondent who was charged with being deportable was filing for adjustment of status under section 245 of the Act. Because the respondent had not departed and returned to the United States since his conviction, and because he was not then immediately eligible to file for adjustment of status (his permanent resident spouse's visa petition on his behalf would not have been current), the Board found him ineligible for a waiver and declined to address the constitutional implications of that finding. Claiming due process and equal protection violations, the respondent appealed to the United States Court of Appeals for the Eleventh Circuit.

## B. Remand by the United States Court of Appeals
## for the Eleventh Circuit

The Eleventh Circuit reversed the Board's original, unpublished decision, finding that the distinction drawn between the respondent's circumstances and those existing in the published Board decision in *Matter of Sanchez, supra*, violated the equal protection component of the Due Process Clause of the Fifth Amendment. The court examined whether there was any rational basis for Board's interpretation of section 212(h) as affording relief to a permanent resident charged with deportability in deportation proceedings who, like Sanchez, had departed and returned to the United States and *who could have been* charged with being inadmissible at the time of his return, while denying such relief to a permanent resident, like Yeung, who had never departed the United States.

The court of appeals noted that the legislative purpose of the section 212(h) waiver was to provide the Attorney General with an opportunity to exercise discretion to waive certain grounds of excludability for persons seeking entry or admission into the United States. Nevertheless, the court of appeals reasoned, once the Board had interpreted the statutory waiver as applicable to deportation charges and available in deportation proceedings, we could not then draw an arbitrary or unreasonable distinction among those similarly situated aliens in deportation proceedings regarding who may be considered for a waiver.

The court held that relegating Yeung "to a different classification of persons simply by virtue of his failure to depart and reenter, is to recognize a distinction that can only be characterized as arbitrary, and that is without 'a fair and substantial relation to the object of the legislation.'" 76 F.3d at 340 (quoting *F.S. Royster Guano Co.,* 253 U.S. 412, 415 (1920). The court analogized the equal protection issue to that which was resolved in *Francis v. INS*, 532 F.2d 268, 269 (2d Cir. 1976), pertaining to the issue of availability of a waiver under section 212(c). *See also Matter of Silva*, 16 I&N Dec. 26 (BIA 1976) (deferring to the decision in *Francis v. INS, supra*, that extended access to a waiver under section 212(c) to persons in deportation proceedings charged with a ground comparable to a ground of inadmissibility, and adopting it for nationwide application).

Having found the Board's interpretation of section 212(h) of the Act unconstitutional as applied to the respondent, the court remanded this case to the Board with instructions to reconsider its prior interpretation of section 212(h) in *Matter of Sanchez, supra, Matter of Parodi, supra*, and the instant case, in order to make them consistent with one another and with the language of the statute itself. In *Matter of Yeung, supra*, we expressly declined to do so.

## II.  SECTION 212(h) AND ITS APPLICABILITY TO THE RESPONDENT

### A.  Section 212(h) of the Act

As amended by section 348 of the IIRIRA, the basic terms of substantive statutory eligibility for a waiver under section 212(h), as amended, remain the same as those that were introduced in 1990. *See* section 212(h)(1) of the Act. By its plain language, however, the current version of section 212(h) contains new substantive restrictions. These preclude from eligibility for the waiver only an alien who has been convicted of or has admitted committing acts involving torture or murder, and one lawfully admitted for permanent residence who has, since the date of admission, been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien. Section 212(h) of the Act (1996).

The current version of the section 212(h) waiver provision does not, on its face, distinguish between those charged with inadmissibility and those charged with deportability in removal proceedings. Consistent with the legislative goal of achieving a single removal process, it does not distinguish between persons based on whether they are in exclusion or deportation proceedings. As I have indicated, the current version is applicable to all qualifying persons facing removal and expulsion from the United States whose cases were not subject to an administratively final order entered in exclusion or deportation proceedings as of the date of enactment. IIRIRA § 348(b). This availability extends not only to persons charged with being subject to removal under the new IIRIRA provisions, which took effect on April 1, 1997, but applies back to those in both exclusion and deportation proceedings begun under the prior statute before the effective date of the new removal provisions. *See* IIRIRA §§ 309(c)(1)-(3), 110 Stat. at 3009-625.

Were we writing on a clean slate in a case in which the respondent had asserted eligibility for a waiver under former section 212(h) in a pending exclusion or deportation proceeding not subject to a final administrative order on September 30, 1996, we would be required by the statute to apply its terms and find him ineligible for a waiver under the current section 212(h). We would be obliged to do so, not because we were treating him differently from another lawful permanent resident alien who had departed and reentered the United States, but because, as the result of his conviction, he was expressly precluded from eligibility by the statute. For an individual such as the respondent this might be a classic case of good news and bad news: the good news is that section 212(h) is available without regard to the fact that you are in deportation rather than in exclusion proceedings; the bad news is that under the amended statute, you are expressly ineligible because you have been convicted of an aggravated felony and/or have not lawfully resided in the United States continuously for not less than 7 years.

## B. The Board's Decision in *Matter of Yeung*

At the time we considered the respondent's case on remand from the court of appeals, the IIRIRA just had been enacted and section 212(h) had been amended to apply immediately to any alien in exclusion or deportation proceedings as of that date, unless a final administrative order had been entered in those proceedings as of that date. We found that "[s]ince the time that the parties briefed the issues in this case, as those issues were set forth by the court of appeals, *Congress has acted to clearly bar this respondent from obtaining section 212(h) relief.*" *Matter of Yeung, supra*, at 3 (emphasis added). The "clear" change that Congress made was to preclude any person who previously was admitted as a lawful permanent resident and then convicted of an aggravated felony after admission from obtaining a waiver under section 212(h) of the Act.[3] Therefore, in *Matter of Yeung, supra*, at 4, we denied the respondent's appeal on remand precisely because he had been convicted of an aggravated felony after a previous admission as a lawful permanent resident, and held that "[t]here is no question that the new version of section 212(h) applies."

Assuming that we are correct in concluding that the present terms of section 212(h) of the Act are applicable to one such as the respondent, whose final administrative order was remanded by a federal circuit court and was pending before the Board on September 30, 1996, *cf. Matter of Pineda, supra; see also id.* (Guendelsberger, joined by Schmidt and Rosenberg, dissenting), we nonetheless completely ignored the findings of the federal reviewing authority in our decision in *Matter of Yeung, supra*. The circuit court had found that our prior conclusion that the respondent was ineligible for section 212(h) relief was unconstitutional as applied. It follows that the resulting denial of an opportunity to submit an application for section 212(h) relief was, therefore, a violation of the Fifth Amendment guarantee to due process of law.

On reconsideration, I cannot agree with our decision in *Matter of Yeung, supra,* at 4-5, in which I joined the unanimous majority in finding that "[t]he new legislation supersedes the decision of the court of appeals in this case. It obviates the need for us to decide here whether an alien who has not departed . . . may ever qualify for that relief." Such a statement is without basis in law or fact.

First, as a statement of general applicability, the current version of section 212(h) of the Act may preclude a lawful permanent resident who has been

---

[3] Although the respondent was charged as being deportable for having been convicted of a crime of moral turpitude, his conviction, as defined under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (1994), *as amended by* IIRIRA § 321(a)(3), 110 Stat. at 3009-627, is considered to be a crime of violence which is classified as an aggravated felony. As the respondent was previously admitted for permanent residence, he arguably comes within the preclusion.

convicted of a crime constituting an aggravated felony or who has fewer than 7 years' continuous residence from eligibility, but it does not preclude all lawful permanent resident aliens, most of whom are within the United States and may not have departed following a nonprecluding violation of the Act, from seeking such relief.

Second, there is no evidence that Congress acted clearly to bar this alien from relief, as we contend in our decision. Third, the new legislation in no way supersedes the holding of the Court of Appeals for the Eleventh Circuit that the former section 212(h) was unconstitutional as applied by the Board to the respondent and violated his right to equal protection and due process of law under the Fifth Amendment. And, fourth, the new legislation does not change the fact that, prior to its enactment, the respondent was prevented from applying for a waiver because of an error of constitutional magnitude made when we treated him differently from others similarly situated without rational reason.

Contrary to the apparent conclusion of my colleagues upon their reexamination of the instant case, I find that the legal holding of the court of appeals remains intact. We are not writing on a clean slate. On reflection, and in consideration of the arguments here posed by respondent, I conclude that our generalizations about the effect of the amended section do not satisfactorily address the individual posture of the respondent's case or justify the decision we rendered in it on remand from the court of appeals. In my view, the finding of unconstitutionality of a statutory provision as applied to the respondent by a Federal court of appeals necessarily is directly relevant to our decision concerning the applicability of the new legislation to the respondent's case and should have been considered.

In *Matter of Yeung, supra*, we acknowledged that the court of appeals had found our interpretation of the statute extending relief to certain individuals in deportation proceedings unconstitutional as applied to the respondent. We never considered, as we were instructed by the court to do, whether or how our unconstitutional affirmance of the Immigration Judge's denial of the respondent's attempt to apply for a waiver under section 212(h) might be reconciled with our prior precedent decisions. We neither attempted to harmonize our decision in that case—found by the court of appeals to violate the respondent's equal protection and due process rights—with the treatment we afforded others the court found to be similarly situated but for the fact of a departure and reentry. And we never addressed the significance of the court's finding that we violated the respondent's right to equal and fair treatment, as it applied or should have applied to our adjudication of his case on remand.

## III. EQUITABLE RELIEF IS APPROPRIATE TO CORRECT DEFECTS OF CONSTITUTIONAL PROPORTION

In the absence of any decision rationalizing or justifying the different treatment accorded the respondent that the court of appeals had found unconstitutional, I believe we are compelled to proceed on the basis that the respondent had initially suffered an injury of constitutional proportion. The injury suffered was inherently prejudicial. *Cf. Matter of Santos*, 19 I&N Dec. 105, 110 (BIA 1984) (involving a situation in which "the operative facts are undisputed, deportability is clear," and the respondent did not establish prejudice on appeal).

According to the court of appeals, the opportunity or right to apply for a section 212(h) waiver under the statute then in existence should have been available to the respondent as a matter of equal protection of the laws, and it was not. This is not a merely harmless error. *Shahendeh-Pey v. INS*, 831 F.2d 1384 (7th Cir. 1987) (finding harmless error doctrine not to require proof that a claim would have succeeded on the merits so long as the violation had the potential for affecting the outcome of the hearing); *Sewak v. INS*, 900 F.2d 667, 670 n.7 (3d Cir. 1990) (rejecting harmless error doctrine where respondent was denied his fundamental statutory right to receive notice of hearing); *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir.) (holding no showing of prejudice required where a fundamental right is at stake), *cert. denied,* 513 U.S. 1014 (1994); *Rabiu v. INS*, 41 F.3d 879 (2d Cir. 1994) (holding counsel's failure to file an application resulting in loss of an opportunity for a hearing to constitute ineffective assistance and a due process violation which is inherently prejudicial).

As the result of his being treated differently in deportation proceedings from other lawful residents who physically departed and returned to the United States following conviction for a deportable offense, the respondent was prevented from applying for a waiver under section 212(h), for which he then was otherwise statutorily eligible in all respects. Although there is no absolute right to be granted discretionary waiver relief, the respondent was unreasonably denied the opportunity for discretionary consideration of this waiver in lieu of being deported and separated from his family and home without recourse to any amelioration. *Snajder v. INS*, 29 F.3d 1203, 1207-08 (7th Cir. 1994).

The extension of equitable relief in the context of statutory and discretionary aspects of deportation proceedings has long been accepted as within the province of the Board to fashion. We have invoked such authority historically by designating certain determinations warranting equitable intervention as being effective "nunc pro tunc."

### A. Nunc Pro Tunc Relief of an Equitable Remedy

The term "nunc pro tunc" is defined as follows:

> Lat. Now for then. A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, *i.e.,* with the same effect as if regularly done . . . . Nunc pro tunc signifies now for then, or, in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done.

Black's Law Dictionary 1069 (6th ed. 1990); *see also Matter of Garcia*, 21 I&N Dec. 254 (BIA 1996) (Guendelsberger, joined by Schmidt, dissenting).

From its inception, the Board has embraced the equitable concept of granting relief nunc pro tunc as appropriate and within the Attorney General's authority to extend in cases involving exclusion and deportation. In *Matter of L-*, 1 I&N Dec. 1, 5 (BIA, A.G. 1940), the first case decided by the Board under the delegated authority of the Attorney General, the Attorney General found that it would be capricious to conclude that "the technical form of the proceedings" would determine the result, and instructed that consideration for relief in deportation proceedings should relate back to the time at which the respondent was readmitted notwithstanding his conviction. The Attorney General held that the respondent should "be permitted to make the same appeal to discretion that he could have made if denied admission in 1939." *Id.* at 6.

In that first decision, the Attorney General recognized the inequity between grounds of exclusion and deportation as applied to those who were stopped and challenged upon entry or reentry, and those who were, albeit wrongly, admitted and later charged with being deportable. Thus, nunc pro tunc relief was invoked to remedy errors made by the agency, i.e., failing to stop and deny entry to the respondent in *Matter of L-, supra*, to his disadvantage.

We have found nunc pro tunc relief appropriate in cases going back for more than 50 years, notwithstanding the intervening legislative changes to the substance of the Act. As I have indicated, even prior to the enactment of the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163, there existed the administrative practice of granting such relief in a few well-defined instances. *See Matter of Garcia, supra* (citing *Matter of S-N-*, 6 I&N Dec. 73, 76 (BIA, A.G. 1954) (reporting the Attorney General's ruling that the 1952 Act provided no reason to abandon or reverse the practice of affording relief nunc pro tunc)).

Continuing to the present, we have focused our attention on certain circumstances identified as warranting nunc pro tunc relief to achieve an exclusively equitable result serving the interests of the agency and the individual alike. First, such action has been invoked as a justice-based remedy. Nunc pro tunc action has been taken where "complete justice to an alien dictates such an extraordinary action" and the "record before us presents many sympathetic and mitigating factors." *Matter of T-*, 6 I&N Dec. 410, 413 (BIA 1954) (considering whether an application filed under the 1917 Act was subject to the terms of the 1952 Act).

Second, such action has been invoked as an efficiency-based remedy, in which nunc pro tunc relief was warranted to achieve an appropriate and necessary disposition of the case. *Matter of Vrettakos*, 14 I&N Dec. 593, 599 (BIA 1973; A.G. 1974); *see also Matter of Ng*, 17 I&N Dec. 63 (BIA 1979); *Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976). Under this variation, we have invoked nunc pro tunc adjudication as appropriate where such action, either individually or combined with other applications, serves to eliminate the ground of excludability or deportability. These cases have included retroactive adjudication of applications for admission following an unauthorized entry after deportation. *See Matter of Rapacon*, 14 I&N Dec. 375 (R.C. 1973); *Matter of Farinas*, 12 I&N Dec. 467 (BIA 1967).

Third, we have extended the concept of nunc pro tunc adjudication as a pragmatic tool in relation to cases such as those involving adjustment of status, which trigger a mechanism admitting a qualified individual to the United States as an immigrant. *See, e.g., Matter of Smith*, 11 I&N Dec. 325 (BIA 1965); *see also Matter of Vrettakos, supra*, at 600. In these cases, we are not actually adjudicating a prior action affecting admissibility as though we were adjudicating it at the time of a prior entry, but are adjudicating a prior act or course of conduct as it stands now.

Nunc pro tunc relief is not restricted to the above-cited situations either by generally accepted principles of jurisprudence, by agency definition or policy, or by statute. The notion that the treatment of a respondent facing deportation must adhere to statutory and regulatory requirements, as well as to principles of fairness and due process, is not only undisputed, but supported by administrative and federal case law. The question before us, here, is whether there is a basis to apply to the respondent's case, in order to fairly resolve it, the provisions of the law as they existed when we erroneously denied him his rights under those laws? *See, e.g., Matter of C-*, 20 I&N Dec. 529, 531 (BIA 1992) (rejecting the argument that an asylum application filed after a change in the statute rendering the applicant ineligible should be deemed constructively filed prior to the statute's effective date, where there was no showing that fundamental rights were abridged or that the applicant would benefit, since he was ineligible at the time he first sought asylum under existing regulations). That is, is there equitable relief available to this respondent nunc pro tunc notwithstanding the amendment of the statute? I believe that such equitable relief is available.

## B. Procedural Errors Warrant Reconsideration and Remand Under the Prior Version of the Statute

Ordinarily, the situation in which an alleged procedural error, ranging from a mistranslation attributable to a court interpreter, to the inappropriate exclusion of evidence or preclusion of testimony by the Immigration Judge, to failure to advise of the right to counsel, to the outright denial of an

opportunity to submit an application for relief from deportation flowing from an erroneous interpretation of law by the Immigration Judge or the Board, is readily remedied. Typically, such procedural errors are cured by simply holding a new hearing "in compliance with due process requirements," as this remedy restores the wronged applicant to the position in which he found himself prior to the procedural error. *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993); *see also Shahandeh-Pey v. INS, supra*, at 1390 (remanding to allow an alien denied the opportunity to present evidence and to "have his day in court" and present all of his evidence in support of his application for asylum in lieu of deportation).

Loss of an opportunity to apply for a waiver for which an applicant is eligible, caused by factors beyond the respondent's control, may violate due process. *Rabiu v. INS, supra*, at 882-84 (finding ineffective counsel's failure to file a timely application for a waiver to violate the respondent's rights and require reopening); *see also Saleh v. INS*, 962 F.2d 234, 241 (2d Cir. 1992). Violations of procedural due process generally "call for the prophylactic remedy of vacating the order of deportation and for writing thereafter on a clean slate." *Castenada-Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir. 1975); *see also Matter of Santos, supra* (requiring that such procedural violations are prejudicial). But when holding another hearing does not cure the defect in the prior proceeding or make the prejudiced applicant "whole," we are forced to look beyond such routine remedies.

It is then that we approach the concept of nunc pro tunc relief. *Batanic v. INS, supra* (holding that where denial of the right to counsel deprived the respondent of his right to apply for asylum, counsel's ability to protect the respondent's rights in a reconvened hearing must include the ability to apply for asylum nunc pro tunc). In particular, "*when the procedural defect has also resulted in the loss of an opportunity for statutory relief,*" the demands of due process require more than merely reconvening the hearing. *Id*. at 667 (emphasis added). When a violation of due process results in a denial of a fair hearing on the question of eligibility for relief, the respondent should be afforded the opportunity for consideration of his claim based upon the law as it existed at the time he was deprived of his rights. *Snajder v. INS, supra*, at 1208 n.12.

Having been found by the court of appeals to be unconstitutional, our original refusal to entertain an application for a waiver under section 212(h) in the respondent's case amounts to a procedural error resulting in the denial of due process. This error or defect resulted in the loss of an opportunity for statutory relief under section 212(h) of the Act. I therefore find our conclusion in *Matter of Yeung* to perpetuate the inequity of the treatment we have accorded the respondent. The process due the respondent—an opportunity to present his application for a section 212(h) waiver for adjudication—has not become moot, as we suggest in that decision, in light of the change in the law rendering the respondent substantively ineligible for the waiver for other reasons;

instead, the process due the respondent requires that the respondent "be given the advantage of the law that existed when his first hearing was held." *Batanic v. INS, supra*, at 668.

## IV. CONCLUSION

It should be self-evident that it is inappropriate for us to allow an amendment of the statute to virtually excuse our determination, which has been found unconstitutional, precluding the respondent from applying for available relief from deportation. Such action effectively relieves us of any responsibility for the resulting procedural defect in the proceedings, and leaves the respondent subject to deportation despite the undisturbed determination of the court of appeals. I find it difficult to accept that redress for violations of constitutional rights and fundamental fairness in deportation proceedings should be so vulnerable to the unrelated, but coincidental, changes in the law.

On reconsideration, I conclude that our decision in *Matter of Yeung, supra*, is indeed erroneous as a matter of law. I would modify both our reasoning in that decision, and the result, affirmed here by the majority, which is the product of our erroneous reasoning as applied to the respondent. Consequently, I dissent.